IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRI MORSE BACHOW, Individually on Behalf of Herself and All Others Similarly Situated, | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| v. | § | 3-09-CV-0262-K |
| SWANK ENERGY INCOME ADVISERS, LP, SWANK CAPITAL, LLC, JERRY V. SWANK, MARK W. FORDYCE, CPA, BRIAN R. BRUCE, RONALD P. TROUT, and EDWARD N. McMILLAN, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Swank Energy Income Advisers, LP, Swank Capital, LLC, Jerry V. Swank, Mark W. Fordyce, Brian R. Bruce, Ronald P. Trout, and Edward N. McMillan's (collectively "Defendants") Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 23), filed July 17, 2009. For the following reasons, the Court **DENIES** the Motion as to Count I and **GRANTS** the Motion as to Counts II and III.

## I. Factual and Procedural Background

Lead Plaintiff Terri Morse Bachow ("Plaintiff") in this case represents a class of

individuals who purchased Cushing MLP Total Return Fund's (the "Fund") stock on or between September 1, 2008 and December 19, 2008 ("Class Period"). According to Plaintiff, the Fund invested in the energy infrastructure sector. Plaintiff asserts that less of the Fund's reported net assets were invested while more of the Fund's reported net assets consisted of an accounting accrual owing to timing differences in the payment of taxes. Plaintiff claims that as this deferred tax asset grew throughout the Class Period, the odds declined that the Fund would ever earn any profit against which the deferred tax asset could be utilized. Thus, by the end of the Class Period, the accounting accrual constituted more than half of the Fund's stated net assets, and the likelihood that it would realize any benefit from the accrual had all but disappeared. Plaintiff alleges that when this adverse information was disclosed to the public on December 19, 2008, the market price for the Fund's shares plummeted from $7.40 to $3.81, causing Plaintiff and other Fund shareholders to lose tens of millions of dollars.

On February 10, 2009, Plaintiff filed a class action complaint. The Named Defendants in this case are: Swank Energy Income Advisers, LP ("Swank Advisers"), the investment adviser to the Fund; Swank Capital, LLC ("Swank Capital"), the general partner of Swank Advisers; Jerry V. Swank ("Swank"), a Trustee and Chairman of the Board, Chief Executive Officer, and President of the Fund, the Managing Partner of Swank Advisers, and the principal of Swank Capital; Mark W. Fordyce ("Fordyce"), a Trustee of the Fund and the Fund's Chief Financial Officer, Principal Accounting

Officer, Treasurer, and Secretary, and Chief Financial officer of Swank Advisers; Brian R. Bruce ("Bruce"), a Trustee of the Fund and Chairman of the Fund's Audit Committee; Edward N. McMillan ("McMillan"), the Fund's "Lead Independent Trustee" and a member of the Fund's Audit Committee; and Ronald P. Trout ("Trout"), a Trustee of the Fund, Chairman of the Fund's Nominating, Corporate Governance, and Compensation Committee, and a member of its Audit Committee.

Plaintiff asserts three causes of action in her Amended Complaint. First, Plaintiff alleges that Defendants Swank and Fordyce violated Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 of the Securities and Exchange Commission ("SEC"). Second, Plaintiff claims Defendants Swank Capital, Swank, Fordyce, Bruce, Trout, and McMillan violated Section 20(a) of the Exchange Act of 1934. Third, Plaintiff avers that Defendant Swank Advisers violated Section 36(b) of the Investment Company Act of 1940 ("ICA"). Defendants filed a motion to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6).

## II. Legal Standard

In reviewing a Rule 12(b)(6) motion, which tests the legal sufficiency of the claims stated in the complaint, a court must look solely at the pleadings themselves. *Jackson v. Procunier*, 789 F.2d 307, 309–10 (5th Cir. 1986). In looking at whether the complaint states a valid claim upon which relief can be granted, the court must view all facts in a light most favorable to the plaintiff and resolve any doubts in favor of the

plaintiff. *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The court must assume the truth of all pleaded facts and liberally construe the complaint in favor of the plaintiff. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002). To survive a 12(b)(6) motion, a plaintiff must not make mere conclusory allegations, but must instead plead specific facts. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (citing *Twombly*, 550 U.S. at 556). Dismissal is appropriate where the plaintiff merely makes conclusory allegations or unwarranted deductions of fact. *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). Likewise, dismissal is appropriate where the plaintiff makes no allegations regarding a required element of the asserted claim. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). However, in the context of securities fraud, a dismissal pursuant to Rule 12(b)(6) is difficult to obtain since such

a claim revolves around fact-specific inquiries. *See Basic Inc. v. Levinson*, 485 U.S. 224, 240 (1988).

**III. Analysis**

As stated earlier, Plaintiff's Amended Complaint contains three causes of action: (1) a violation of Section 10(b) of the Exchange Act and Rule 10b-5 of the Securities and Exchange Commission; (2) a violation of Section 20(a) of the Exchange Act; and (3) a violation of Section 36(b) of the ICA. The Court will now apply the above standard to determine whether Plaintiff's pleadings are sufficient.

**A. Section 10(b) Claims**

Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security. . . [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe. . . ." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated pursuant to section 10(b), makes it unlawful:

> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(b). Plaintiffs claiming a violation of 10(b) must plead, in

connection with the purchase or sale of any security: "(1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which plaintiff relied (5) that proximately caused [the plaintiff's] injury." *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 406–07 (5th Cir. 2001); *see Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005).

Because Plaintiff asserts securities fraud under Section 10(b) and Rule 10b-5, she must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Rule 9(b) requires a plaintiff alleging fraud to plead with particularity the circumstances constituting fraud, including specific allegations of the time, place, and content of the misrepresentations, the identity of the individuals who made the misrepresentations, and what the person who made those misrepresentations gained from the making of those statements. *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). In addition, the PSLRA requires complaints alleging securities fraud to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (1998). For particularity purposes, a plaintiff must specify the who, what, when, where, and how of their alleged securities fraud. *ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349–50 (5th Cir. 2002).

1. Material Misrepresentation

In order to show that a defendant's statement or omission was "material," the plaintiff must show that the omitted or misrepresented information would have been significant to a reasonable investor in making their investing decisions. *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). Materiality depends on the interplay between the magnitude of the information and the probability that the event will occur. *Id.* Broad, generalized statements considered "puffery" are not actionable under Section 10(b) and Rule 10b-5. *See Rosenzwig v. Azurix Corp.*, 332 F.3d 854, 862 (5th Cir. 2003). Statements which are "mere puffery" are "vague and optimistic" containing "no concrete factual or material misrepresentation." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) (quoting *Lain v. Evans*, 123 F. Supp. 2d 344, 348 (N.D. Tex. 2000)),

Plaintiff alleges that Defendants made materially misleading statements that the Fund was likely to use the deferred tax in two SEC filings and in "fact sheets" issued periodically to the shareholders. In the first SEC filing, the Fund's Certified Shareholder Report on Form N-CSR ("Annual Report"), Defendants stated "Management expects to realize the full benefit of the deferred tax asset." (Compl. ¶ 55). The second SEC filing, the Fund's Semi-Annual Certified Shareholder Report on Form N-CSR ("Semi-Annual Report"), contained the following statement, "the Fund believes it is more likely than not that the Fund will realize its deferred tax asset." (Compl. ¶ 66). Plaintiff asserts that these statements are false or misleading because Defendants Swank and Fordyce

failed to correct the statements upon learning the information was false or misleading.

Additionally, Plaintiff asserts that Defendants published or caused the Fund to publish fact sheets that purported to state the Fund's total assets, net asset value (NAV) per share, Swift Advisers' management fee, the Top Five Positions of the Fund, and that the Fund invested at least eighty percent of its net assets in master limited partnerships investments. (Compl. ¶ 69). Plaintiff alleges that these fact sheets are linked to Defendants Swank and Fordyce because both Defendants signed the amended Registration Statement on Form N-2 ("Prospectus"), the Annual Report, and the Semi-Annual Report. (Compl. ¶¶ 24, 58, & 63).

Furthermore, Plaintiff alleges how each of those statements in the fact sheets was false or misleading:

> (1) The statements concerning the Top Five Positions were false or misleading because they failed to disclose that the largest asset of the Fund, by far, throughout the Class Period was the overstated deferred tax asset, and that as a result, the Fund assets actually invested were only one-half of the amounts stated in the "fact sheet," and the concentration of the Fund's Top Five Positions was twice the amounts stated in the "fact sheet."
>
> (2) The Fund's stated total assets included an overstated deferred tax asset, for which an adequate valuation reserve was not established.
>
> (3) The statement of the NAV per share was false because it was significantly overstated by virtue of the overstated deferred tax asset, for which an adequate valuation reserve was not established.
>
> (4) The statement concerning Swift Advisers' management fee was false because that fee was a significantly higher percentage of the Fund's actual NAV than its overstated NAV, since the management fee was charged on

> the overstated deferred tax asset as well as the invested assets of the Fund.
>
> (5) In addition, the Fact Sheets were false because none of them disclosed the growing amount of the Fund's deferred tax asset; the amount, if any, of the valuation reserve against it; or the fact that Defendants had no reasonable basis to conclude that the Fund was more likely than not to utilize the deferred tax asset.

(Compl. ¶¶ 70 & 74).

Plaintiff states that statements and omissions made by Defendants Swank and Fordyce were material in light of:

> (1) the Fund's history of generating net operating losses and capital losses (which may only be used to offset capital gains and cannot be used to offset ordinary income) that were other than temporary continued;
>
> (2) the cost or tax basis of the Fund's assets continued to materially exceed their fair values;
>
> (3) the fair values of the Fund's assets were so far below the Fund's cost or tax basis for the assets that there was little or no chance that the assets would ever be sold at a profit;
>
> (4) the Fund's investments were illiquid;
>
> (5) it was not reasonably foreseeable that the Fund would earn capital gains on its investments;
>
> (6) evidence grew that it was far more likely than not that the Fund would not generate taxable income and, therefore, (i) tax benefits would not be realized, and (ii) a valuation allowance was required to reduce the deferred tax asset to zero;
>
> (7) it became less reasonably foreseeable that the Fund would earn capital gains or other profit from the disposition of those assets;
>
> (8) the Fund's real or reasonably expected investment losses were other than temporary or short-term; and

> (9) Deloitte expressed concern to the Fund and to Defendants Swank and Fordyce in September, 2008, that the deferred tax asset was not properly stated because the Fund had not established an adequate valuation allowance for the asset.

Compl. ¶¶ 47, 50 & 68.

In this case, Plaintiff has sufficiently plead that Defendants allegedly made materially misleading statements and omissions. Plaintiff has effectively plead the who, what, when, where and how of securities fraud as to the Defendants. *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993). Plaintiff has sufficiently pled facts that—if true—would show that Defendants had knowledge of the falsity of their statements or omissions.

Plaintiff has shown that these statements made by Defendants are material in that the allegedly misrepresented information would have been important to a reasonable investor in making their investment decision. *See Basic*, 485 U.S. at 232. The Court cannot conclude these statements amounted merely to "puffery" as they could be found to contain material misrepresentations and there is nothing vague or merely optimistic about them. *See Rosenzwig v. Azurix Corp.*, 332 F.3d 854, 862 (5th Cir. 2003); *see also Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 698 (5th Cir. 2005).

a) Safe Harbor under PSLRA

The PSLRA does provide a safe harbor for both written and oral forward-looking statements if, and to the extent that, the statement is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying

important factors that could cause actual results to differ materially from those in the forward-looking statement. . . [and was not] made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 77z-2(c)(1)(A)-(B). To avoid the safe harbor provision, the plaintiff must plead facts evidencing the statement was made with actual knowledge of its falsity. *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004). As discussed in the Material Misrepresentation section, the Court concludes Plaintiff has sufficiently alleged that Defendants knew the statements they made were false. Therefore, Plaintiff has successfully avoided the PSLRA safe harbor provision. *See id.*

2. Scienter

In the context of securities fraud, the Fifth Circuit has defined scienter as being an "intent to deceive, manipulate, or defraud" or the type of "severe recklessness" which poses a "danger of misleading buyers or sellers. . . [and] is either known to the defendant or is so obvious that the defendant must have been aware of it." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961–62 (5th Cir. 1981). To allege scienter based on conscious behavior, or intent, a plaintiff must plead sufficient circumstantial evidence of misbehavior. *Mortensen v. AmeriCredit Corp.*, 123 F. Supp. 2d 1018, 1025 (N.D. Tex. 2000) (Fitzwater, J.). Severe recklessness encompasses "highly unreasonable omissions or misrepresentations," not simply of inexcusable or simple negligence, but of "an extreme departure from the standards of ordinary care," and which poses a risk of

misleading buyers and/or sellers, which either the defendant knows or it is so obvious that the defendant must have been aware of it. *Fener v. Belo Corp.*, 425 F. Supp. 2d 788, 795 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 408 (5th Cir. 2001)). Scienter is properly pled where it is alleged that a defendant knowingly or recklessly made statements to the market while aware of facts that, if not disclosed, would render those statements misleading. *See Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696–97 (5th Cir. 2005). Allegations of motive and opportunity may meaningfully enhance the strength of the inference of scienter. *Nathenson*, 267 F.3d at 412. The Court considers the plaintiff's evidence of scienter cumulatively. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 247 (5th Cir. 2003).

The Complaint alleges that Defendants Swank and Fordyce knew that the statements at issue were misleading and that they had a duty to correct them. The Complaint first asserts that Defendant Swank, in his roles as Chairman of the Board, Chief Executive Officer, and President of the Fund, as well as, Managing Partner of Swank Advisors, the investment advisor of the Fund, and a trustee of the Fund, reviewed the Fund's books and records, and that Defendant Fordyce, in his roles as the Fund's Chief Financial Officer, Principal Accounting Officer, Treasurer and Secretary, as well as, Chief Financial Officer of Swank Advisors and a trustee of the Fund, performed a similar review of the Fund's books and records. (Compl. ¶ 40–41). The Complaint further alleges that those reviews must have disclosed to Defendants Swank and Fordyce:

(i) the Fund's history of generating net losses; (ii) that the cost basis of the Fund's assets greatly exceeded their fair values as of the beginning of the Class Period; (iii) that much of the Fund's assets were not liquid; and (iv) that it was thus extremely unlikely that the Fund would generate income permitting it to use the massive tax benefit. (Compl. ¶¶ 40–41).

Plaintiff also asserts that, at the outset of the Class Period, Defendants Swank and Fordyce both participated in and were aware of the discussions with Deloitte in which Deloitte expressed concerns about reflecting the deferred tax asset as an asset in the Fund's calculation of its NAV. (Compl. ¶¶ 51–52). Plaintiff alleges that, in light of those communications, Defendants Swank and Fordyce—who signed SEC filings stating their belief that the Fund would use the deferred tax asset—knew by the beginning of the Class Period that it was highly unlikely the Fund would ever utilize the deferred tax asset and thus had a duty to disclose that information.

Moreover, Plaintiff alleges that the Fund's stated NAV is based upon and directly related to the fees paid to Swank Advisers as well as Swank and Fordyce's compensation. (Compl. ¶ 83). Thus, Swank and Fordyce had motive to overstate the Fund's NAV to maximize their own compensation and the fees paid to Swank Advisers. In addition, their senior executive positions gave Defendants Swank and Fordyce authority to control whether relevant information about the deferred tax asset would be disclosed. (Compl. ¶¶ 16–17).

Considering all of Plaintiff's evidence cumulatively, the Court concludes Plaintiff has sufficiently plead scienter.

3. Reliance

The third element Plaintiff must plead is reliance by the investors on the statements made by Defendants. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). In class action suits involving securities fraud, the Supreme Court has noted that plaintiffs may use the "fraud on the market" theory to prove reliance. *Basic*, 485 U.S. at 241; *see Nathenson*, 267 F.3d at 413–14. The Supreme Court stated:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements . . . .

*Basic*, 485 U.S. at 241–42. When material misrepresentations have been made publicly or omissions have made the market information misleading, the stock price is not accurate and investors may be defrauded. *In re Azurix Corp. Sec. Litig.*, 198 F. Supp. 2d 862, 880 (S.D. Tex. 2002). If the plaintiff can show that material misrepresentations were placed into the market or omissions made the market information misleading, the plaintiff is entitled to a presumption of reliance. *Id.* Plaintiff must present evidence that the stock price was affected by the misrepresentation or omission. *See Nathenson*, 267 F.3d at 414. In providing this evidence, Plaintiff may rely on the "fraud on the market" theory to establish reliance by the investors. *See Basic*, 485 U.S. at 241; *Nathenson*, 267

F.3d at 414–15.

The Court notes at the outset that Defendants make no argument in their motion to dismiss related to Plaintiff's failure to sufficiently establish reliance in the Complaint. However, the Court will still address this necessary element. In the Complaint, Plaintiff contends Defendants made allegedly material misrepresentations and/or omissions, as discussed in detail *supra* in the Material Misrepresentations section. Plaintiff alleges that the price of the Fund's stock fell 50% in the days following the December 19th press release which revealed that the Fund decided to establish a valuation allowance to fully offset the deferred tax asset. The Court concludes Plaintiff has sufficiently shown that allegedly material misrepresentations or omissions were placed into the mix of market information as discussed earlier; therefore, Plaintiff is entitled to a rebuttable presumption of reliance. *See Azurix*, 198 F. Supp. 2d at 880.

4. Loss Causation

In order to prove loss causation, a plaintiff must show "a casual connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 342. Showing an inflated stock purchase price alone cannot in and of itself be evidence of loss causation; the misrepresentation which caused the inflated purchase price must have caused an economic loss, not just the potential for one. *Id.* at 345; *see United States v. Olis*, 429 F.3d 540, 546 (5th Cir. 2005) (no loss may be attributable to a misrepresentation until the truth is later revealed and the price of the stock subsequently

drops). Furthermore, the Supreme Court concluded that, pursuant to Federal Rule of Civil Procedure 8(a)(2),the plaintiff must provide the defendant with some notice of the loss and the connection plaintiff sees. *Dura*, 544 U.S. at 346.

Applying the *Dura* standard to this case, the Court concludes Plaintiff has adequately plead loss causation. Plaintiff plead that, during the Class Period, Defendants issued or failed to correct material misrepresentations or omissions regarding the deferred tax asset that came to light on December 19, 2008, causing the price of the Fund's stock to fall dramatically, 50% over the following days. There can be no doubt that this provides Defendants with at least some notice of the loss and the connection Plaintiff sees to the Defendants' alleged misrepresentations and then subsequent revelation of the truth, at least partially, thereby complying with *Dura*. The Court concludes that Plaintiff has sufficiently plead loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–47 (2005).

**B. Section 20(a) Claim**

Section 20(a) of the Securities and Exchange Act holds liable any individual who is a controlling person over another individual who commits securities fraud. 15 U.S.C. § 77t(a). But, a person cannot be liable as a control person over an entity that has not committed an underlying violation. *Flaherty & Crumrine Preferred Income Fund Inc. v. TXU Corp.*, 565 F.3d 200, 206 n.4 (5th Cir. 2009) ("Liability under § 20(a) requires the primary actor to be liable for the underlying violation . . . ."); *Southland Sec. Corp. v.*

*INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 383–84 & n.18 (5th Cir. 2004); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 201 (1st Cir. 2005) ("[A] plaintiff must show under § 20(a) that the controlled entity committed a violation of the securities laws.").

Plaintiff claims Defendants Swank Capital, Swank, Fordyce, Bruce, Trout, and McMillan violated Section 20(a) of the Exchange Act. Defendants argue Plaintiff fails to allege that either the Fund or Swank Advisers—as "controlled persons"—committed any violation of the securities laws; therefore, Swank Capital and the Individual Defendants cannot be liable.

Plaintiff states in her Complaint that the "Control Person Defendants [Swank Capital and the Individual Defendants] acted as controlling person[s] of the Fund and Swank Advisers within the meaning of Section 20(a) of the Exchange Act . . . ." (Compl. ¶ 110). Thus, Plaintiff's Section 20(a) claim is premised on two "controlled persons," the Fund and Swank Advisers. But, Plaintiff does not plead that these "controlled persons" violated any securities laws or regulations. Instead, those allegations are directed toward Defendants Swank and Fordyce individually. (Compl. ¶ 102).

Because the security violations are against Swank and Fordyce—not the Fund and Swank Advisers—then Swank and Fordyce cannot be "control persons" of themselves. *See Southland Sec. Corp.*, 365 F.3d at 384 ("[The defendant] obviously can have no section 20(a) liability for his own statements."). Moreover, Plaintiff's claim fails as to Defendants Swank Capital, Bruce, Trout, and McMillan because there is no allegation

that the supposed "controlled person"—the Fund or Swank Advisers—committed a violation of security laws. *Id.* at 383 ("Control person liability is secondary only and cannot exist in the absence of a primary violation.").

**C. Section 36(b) Claim**

Plaintiff asserts that Defendant Swank Advisers violated Section 36(b) of the ICA. Defendants argue Plaintiff lacks standing to assert a Section 36(b) claim because she was not a shareholder of the Fund at the time of filing the present lawsuit.

In Plaintiff's sworn certification filed in support of her motion to serve as lead plaintiff, Plaintiff stated that she purchased 1,000 shares of the Fund on September 30, 2008, purchased another 1,000 shares on October 8, 2008, and then sold those 2,000 shares on December 24, 2008. (Doc. No. 15-3 p. 2 of 2). Plaintiff has not alleged in her pleadings that she was a shareholder of the Fund at the time she filed this action on February 10, 2009, nor does she allege that she is a current security holder in the Fund.

The '40 Act requires security ownership in order to bring an action:

> An action may be brought under this subsection by the [Securities and Exchange] Commission, or by a *security holder* of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser . . . for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person.

15 U.S.C. § 80a-35(b) (emphasis added). Under the plain language of the statute, only the SEC and "security holders" in an investment company may bring a claim on behalf

of the company. "'Security holders' means current security holders." *Forsythe v. Sun Life Fin. Inc.*, 417 F. Supp. 2d. 100, 117 (D. Mass. 2006) ("Former security holders may not bring a claim on behalf of an investment company that they formerly held shares in, but no longer do."); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 582 (S.D.N.Y. 2006) (holding as a threshold issue that plaintiffs suing under Section 36(b) of the '40 Act have no standing as to funds which they do not own). "Standing is a threshold inquiry and is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery." *Forsythe*, 417 F. Supp. 2d at 118.

Plaintiff argues that the statute does not necessarily require the party bringing the lawsuit to be a current security holder. The Court disagrees based on the plain language of the statute and the legal authority cited above. Because Plaintiff did not own shares of the Fund at the time of filing this lawsuit she lacks standing under Section 36(b) of the ICA.

**IV. Conclusion**

Based on the foregoing, the Court finds that Plaintiff's Amended Complaint sufficiently alleges a Section 10(b) fraud claim against Defendants with the requisite particularity. Plaintiff's Amended Complaint, however, fails to sufficiently allege violations of Section 20(a) of the Exchange Act or Section 36(b) of the ICA. Therefore, the Defendants' Motion to Dismiss is **DENIED** as to Count I (Section 10(b) of the

Exchange Act and Rule 10b-5) and **GRANTED** as to Counts II (Section 20(a) of the Exchange Act) and III (Section 36(b) of the ICA).

**SO ORDERED**

Signed January 6th, 2010

Ed Kinkeade
ED KINKEADE
UNITED STATES DISTRICT JUDGE